UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ANDREW GIAMBOI,                    :    **CASE NO. 3:11-CV-00159**
                                   :
            Plaintiff              :    (Judge Munley)
                                   :
       v.                          :    (Magistrate Judge Smyser)
                                   :
                                   :
PRISON HEALTH SERVICES, INC.,      :
PHS CORRECTIONAL HEALTHCARE,       :
KATHRYN MCCARTY, DR. MICHAEL       :
WEISNER, DR. STANLEY STANISH,      :
ANN BATDORF, CRN, JESSE            :
COLABINE, PA-C, and                :
AMY WESCOTT,                       :
                                   :
            Defendants             :


### REPORT AND RECOMMENDATION


     This case concerns the medical care that the plaintiff

received in prison.  The defendants have filed motions to

dismiss the complaint.  The issue is whether the complaint

adequately pleads Eighth Amendment and negligence claims.  We

conclude that the complaint adequately pleads Eighth Amendment

claims against some but not all of the defendants.  We also

conclude that the complaint adequately pleads negligence

claims.

I. Background and Procedural History.

The plaintiff, who is represented by counsel, commenced this action by filing a complaint.  He complains about the medical care that he received while incarcerated at the State Correctional Institution at Coal Township.

The plaintiff names Prison Health Services, Inc. and PHS Correctional Healthcare as defendants.  He alleges that these entities are the same company or are affiliated companies.  He refers to Prison Health Services, Inc. and PHS Correctional Healthcare collectively as PHS.

The plaintiff also names the following individuals as defendants: Kathryn McCarty, the Health Care Administrator for SCI-Coal Township; Michael Weisner, a doctor employed by PHS; Stanley Stanish, a doctor employed or contracted by PHS, Ann Batdorf, a certified registered nurse employed by PHS, Jesse Colabine, a certified physician's assistant employed by PHS; and Amy Wescott, employed in an unidentified capacity by PHS to provide health care to inmates at SCI-Coal Township.

2

A. Facts Alleged in the Complaint.

The plaintiff alleges the following facts in his complaint.

PHS had a contract with the Commonwealth of Pennsylvania or the Pennsylvania Department of Corrections to provide health care to inmates in Pennsylvania's prison system.

For several years, the plaintiff suffered from sciatica-like symptoms.  He went to sick call many times about his symptoms.  The defendants, however, limited his access to doctors, to appropriate diagnostic testing and to other care that would have determined the cause of and solution to his medical problems.

An MRI was required to determine the cause of the plaintiff's symptoms.  But he was not given an MRI.  Instead, in November of 2006, he was given a standard x-ray which did not reveal acute pathology.

Between November of 2006 and February of 2009, the
plaintiff made repeated complaints about pain radiating down
his legs.  He saw multiple medical practitioners including
defendants Weisner, Stanish, Batdorf, Colabine and Wescott.
The symptoms that the plaintiff reported to the defendants
should have indicated to them herniated disc disease.  The
standard of care required that the defendants order an MRI to
rule in or to rule out herniated disc disease.  But none of the
defendants ordered an MRI.  Instead, the plaintiff's complaints
were dismissed as sciatica and he was given Motrin.

In early 2009, the plaintiff's pain became unbearable.
It was in both of his legs, his hips, and his back.  And it was
spreading and deepening.  The pain was so intense that it
limited the plaintiff's ability to eat, and he began losing
weight.  He was developing Cauda Equina Syndrome.

Cauda Equina Syndrome is a medical emergency which
requires an immediate MRI of the lumbar spine to determine if
there is a lesion, abscess or free body in the spinal canal
that is pressing on the nerves.  But the defendants did not

4

treat the plaintiff's complaints as an emergency and they did not order an MRI.  Instead, the plaintiff was again given an x-ray of his lumbar spine.  The x-ray did not reveal the cause of the plaintiff's symptoms.

On July 7, 2009, the plaintiff saw defendant Weisner, who merely prescribed medication.  The plaintiff asked defendant Weisner if he would diagnose the sciatica as chronic. Defendant Weisner stated that he could see that the plaintiff was in real pain and that the plaintiff's condition technically was a chronic condition.  But, because many people claim to have sciatica, PHS and the medical personnel at SCI-Coal Township do not diagnose sciatica as chronic.  A diagnosis of a condition as chronic would have triggered heightened medical care.

By July 10, 2009, the plaintiff's pain became unbearable.  By 3:00 p.m., he lost all feeling in his penis, testicles, perineum, anus, most of his buttocks, and the back inside of his upper thighs.  He also lost the ability to have a bowel movement and to use the muscles involved with urination.

5

The plaintiff asked a block officer to contact the medical department.  Hours later a nurse came to examine the plaintiff.

The next day the plaintiff was called down to the medical department.  A nurse practitioner said it was impossible for the plaintiff to have lost feeling like he had without being completely paralyzed.  The nurse put a finger in the plaintiff's sphincter, said the everything seems to be in order, and sent the plaintiff away.

The plaintiff was in excruciating pain.  He again went to the medical department.  He was simply given enemas in an attempt to loosen his bowels.  Even though the plaintiff had repeatedly and over a long period of time complained about sciatica, had informed the defendants that he was in severe pain and that he was experiencing loss of feeling in significant parts of his body, the defendants would only treat him for constipation.

6

Only after the plaintiff's mother intervened did PHS and its medical personnel take the plaintiff's complaints seriously and have him evaluated by a neurosurgeon.

In late July of 2009, the plaintiff was referred to Dr. de Luna.  Dr. de Luna did appropriate imaging studies which revealed a herniated disc with a free body.  On July 31, 2009, Dr. De Luna performed a left L4-5 laminotomy, foraminotomy and microdiscetomy and he successfully removed the free body.  But too much time had elapsed and the plaintiff's symptoms have not improved.  He still suffers from saddle anesthesia, urinary retention, loss of rectal sphincter control resulting in frequent incontinent accidents, soiling of clothes and more than twenty bowel movements per day.  He also suffers from an inability to ejaculate.  There is no hope that he will recover any of his lost physiologic function.

It is a policy or custom of PHS to provide the least amount of medical care possible and to delay that care as long as possible.  As a result, it took the plaintiff years to

7

actually see a doctor and the defendants did not order

necessary diagnostic testing including an MRI.


It is a policy or custom of PHS not to diagnose persons

with sciatica as having a chronic problem requiring significant

diagnostic testing and procedures.  As a result, there was a

significant delay in diagnosing and treating the plaintiff

until it was too late to prevent permanent partial paralysis.


It is a policy or custom of PHS that saving money is

more important that diagnosing and treating inmate patients.

As a result, there was a significant delay in diagnosing and

treating the plaintiff until it was too late to prevent

permanent partial paralysis.


It is a policy or custom of PHS to have limited doctors

available to examine, evaluate and treat inmate patients.  As a

result, medical care for inmates, including those who are

seriously ill or injured, is severely rationed.

It is a policy or custom of PHS not to order MRIs even in situations in which there are clinical symptoms which are not explained by other tests such as x-rays.

It is a policy or custom of PHS to treat symptoms rather than to determine the root cause of problems.  As a result, there was a significant delay in diagnosing and treating the plaintiff until it was too late to prevent permanent partial paralysis.

It is a policy or custom of PHS that management of potential litigation is more important than appropriate diagnosis and treatment of inmate patients.  As a result, there was a significant delay in diagnosing and treating the plaintiff until it was too late to prevent permanent partial paralysis.

Defendant McCarty helped to create, to implement and/or to retain the policies and customs of PHS.  When PHS would not let him see a doctor, the plaintiff sought defendant McCarty's help.  He complained that he had repeatedly gone through sick

call and had not received adequate care.  In response to the
plaintiff's plea for help, defendant McCarty told the plaintiff
that he needs to go through sick call.

Defendants PHS and McCarty had a policy or custom of
inadequate training in dealing with prisoners with severe
medical problems.

The defendants' actions were a cause of the plaintiff's
permanent partial paralysis and other injuries and damages.

B. Claims in the Complaint.

The plaintiff contends that all of the defendants were
performing traditional-governmental functions and, thus, were
acting under color of state law.  He contends that the
defendants' conduct constituted deliberate indifference.  He
claims that the defendants' conduct constituted cruel and
unusual punishment under the Eighth Amendment and a deprivation
of due process under the Fourteenth Amendment.

The plaintiff also claims that the defendants were negligent.  He asserts that the defendants owed him a duty of care and that they breached that duty.  He asserts that defendant PHS is liable for its own polices and is also vicariously liable for the actions of the other defendants.

The plaintiff contends that as a result of the defendants' actions he suffered substantial injuries and damages.  He asserts that his damages include severe pain, permanent partial paralysis, reduced earning capacity, future medical expenses, past and future embarrassment and humiliation, and past and future loss of ability to enjoy the pleasures of life.

C. Motions to Dismiss.

Defendants Prison Health Services, Inc. (PHS), PHS Correctional Healthcare (PHS Correctional), Weisner, Stanish, Batdorf and Colabine filed a motion to dismiss the complaint.

Defendant McCarty filed a separate motion to dismiss the complaint.[1]

For the reasons discussed below, we recommend that the motion to dismiss filed by defendant McCarty be denied and that the motion to dismiss filed by defendants PHS, PHS Correctional, Weisner, Stanish, Batdorf and Colabine be granted in part and denied in part. We also recommend that the plaintiff be granted leave to file an amended complaint.

II. Motion to Dismiss and Pleading Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and

---

1. Defendant Wescott has not filed a motion to dismiss the complaint. There is no return of service on the docket indicating that she has been served with the summons and complaint. Defendants PHS, PHS Correctional, Weisner, Stanish, Batdorf and Colabine assert in their brief that PHS never employed her and has no knowledge of her. *See Doc. 27* at 14, n.2.

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While legal conclusions can provide the framework of a

13

complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly, supra,* 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual detail necessary to state a plausible claim for relief will vary depending on the case. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

III. Discussion.

Before we address the merits of the motions to dismiss, we address a procedural issue.  The plaintiff contends that the court should deny and dismiss the motion to dismiss filed by defendants PHS, PHS Correctional, Weisner, Stanish, Batdorf and Colabine because those defendants failed to file their brief in support on time.

Local Rule 7.5 requires a party who files a motion to file a brief in support of the motion within fourteen days after the motion is filed.  The Rule further provides that if a brief in support is not timely filed the motion shall be deemed to be withdrawn.

Defendants PHS, PHS Correctional, Weisner, Stanish, Batdorf and Colabine filed their motion to dismiss on March 21, 2011.  But they did not file their brief in support until April 13, 2011 - more than the fourteen days allowed by Local Rule 7.5.  Thus, according to the plaintiff, the motion is deemed withdrawn.

15

Defendants PHS, PHS Correctional, Weisner, Stanish, Batdorf and Colabine concede that they did not file their brief on time.  But they request the court to exercise its discretion and consider their motion on the merits despite the late filing.  They offer as an excuse for their late filing the chronic back problem of defense counsel which they assert was especially painful at the time the brief was due.  But if an extension was necessary because of the medical condition of defense counsel the defendants should have requested an extension of time.  Nevertheless, because the plaintiff has not been prejudiced by the short delay and because the motion to dismiss has been fully briefed, we will not deem the motion withdrawn.  Rather, we will address the motion to dismiss on the merits.

A. Eighth Amendment Claims.

The defendants contend that the complaint fails to state an Eighth Amendment claim upon which relief may be granted.

16

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order for the plaintiff to state a viable Eighth Amendment medical care claim against a defendant he must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

The Eighth Amendment deliberate indifference standard is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009).  To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

        1. Defendants Weisner, Stanish, Batdorf and
        Colabine.

     Defendants Weisner, Stanish, Batdorf and Colabine contend that the complaint fails to state an Eighth Amendment claim upon which relief can be granted against them because it does not contain factual allegations which, if proven, would establish deliberate indifference.  More specifically, they contend that the complaint fails to show that they knew that their conduct presented a substantial risk of harm to the plaintiff and that they disregarded that risk by failing to take reasonable measures to abate it.

     The plaintiff responds that he has adequately pleaded that defendants Weisner, Stanish, Batdorf and Colabine had subjective knowledge of a substantial risk of harm.  He cites to Fed.R.Civ.P. 9(b).

Rule 9(b) provides in relevant part that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  But it does not change the pleading requirements of Fed.R.Civ.P. 8 as to those things. *Iqbal, supra,* 129 S.Ct. at 1954 ("Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid - though still operative - strictures of Rule 8.").  "And Rule 8 does not empower [the plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

The complaint pleads generally that the defendants were deliberately indifferent to the plaintiff's serious medical needs.  But such a conclusory allegation does not satisfy the pleading standard of Fed.R.Civ.P. 8.  Rather, to satisfy the pleading standard the complaint must allege facts raising a reasonable inference that defendants Weisner, Stanish, Batdorf and Colabine were deliberately indifferent to the plaintiff's serious medical needs.  Thus, the complaint must allege facts raising a reasonable inference that these defendants knew that

19

their conduct presented a substantial risk of harm to the
plaintiff.  It does not.

     November 2006 to February 2009.

     The plaintiff alleges that between November of 2006 and
February of 2009, he made repeated complaints about pain
radiating down his legs and that he saw multiple medical
practitioners including defendants Weisner, Stanish, Batdorf,
Colabine and Wescott.  He alleges that the symptoms that he
reported to the defendants should have indicated to them
herniated disc disease and that the standard of care required
the defendants to order an MRI to rule in or to rule out
herniated disc disease.  He alleges that none of the defendants
ordered an MRI.  Instead, he alleges, his complaints were
dismissed as sciatica and he was given Motrin.  These
allegations do not raise a reasonable inference that defendants
Weisner, Stanish, Batdorf and Colabine knew of a substantial
risk of serious harm to the plaintiff and disregarded that risk
by failing to take reasonable measures to abate it.

The plaintiff alleges that his complaints should have
indicated to the defendants herniated disc disease and that the
standard of care required an MRI.  But that the defendants
should have recognized the risk to the plaintiff and proceeded
accordingly does not raise an inference of deliberate
indifference.  Rather it raises an inference of negligence.
And negligence is not the same as deliberate indifference.
*Rouse*, *supra,* 182 F.3d at 197; *Estelle, supra,* 429 U.S. at 106
("Medical malpractice does not become a constitutional
violation merely because the victim is a prisoner.").

"While the distinction between deliberate indifference
and malpractice can be subtle, it is well established that as
long as a physician exercises professional judgment his
behavior will not violate a prisoner's constitutional rights."
*Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir.
1990).  And mere disagreement as to the proper medical
treatment does not support an Eighth Amendment claim. *Monmouth
County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d
326, 346 (3d Cir. 1987).  The plaintiff's allegations that the
defendants diagnosed his condition as sciatica and that they

treated him with Motrin raises an inference that they exercised their professional judgment not that they were deliberately indifferent.  That their judgment turned out to be wrong does not change that.

It is possible that the defendants in fact knew that the plaintiff's condition was more serious than typical sciatica, that an MRI was necessary and that medication other than Motrin was required.  But the facts alleged do not raise a plausible inference of that.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal, supra,* 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  In this case, the factual allegations do not show that defendants Weisner, Stanish, Batdorf and Colabine knew of a substantial risk of serious harm to the plaintiff and disregarded that risk by failing to take reasonable measures to abate it.

Early 2009.

The plaintiff alleges that in early 2009 his pain became unbearable and that it was so intense that it limited his ability to eat and he began losing weight.  He alleges that he was developing Cauda Equina Syndrome, which is a medical emergency which requires an immediate MRI of the lumbar spine to determine if there is a lesion, abscess or free body in the spinal canal that is pressing on the nerves.  But, he alleges, the defendants did not treat his complaints as an emergency and they did not order an MRI.  Instead, he was again given an x-ray of his lumbar spine which did not reveal the cause of his symptoms.

The plaintiff alleges that the defendants did not treat his complaints as an emergency and did not order an MRI, but he lumps the defendants together.  He does not allege what each defendant knew about his worsening symptoms.  Also these allegations again raise only an inference of negligence.  That the defendants should have ordered an MRI rather than just an x-ray does not raise an inference of deliberate indifference.

23

These allegations do not lead to a reasonable inference that defendants Weisner, Stanish, Batdorf and Colabine knew that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

<u>The July 7, 2009 Appointment with Defendant Weisner</u>.

The plaintiff alleges that, on July 7, 2009, he saw defendant Weisner and asked him if he could diagnose the sciatica as chronic.  He alleges that defendant Weisner stated that he could see that the plaintiff was in real pain.  He also alleges that although defendant Weisner acknowledged that his condition is chronic, because many people claim to have sciatica, PHS and the medical personnel at SCI-Coal Township do not diagnose sciatica as chronic.  A diagnosis of a condition as chronic, the plaintiff alleges, would have triggered heightened medical care.  He alleges that rather than diagnosing his condition as chronic, defendant Weisner merely prescribed medication.

These allegations fail to raise an inference of deliberate indifference on the part of defendant Weisner. Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates. Courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).  And mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).  That defendant Weisner prescribed medication for the plaintiff rather than labeling his condition as chronic does not lead to a reasonable inference that he knew that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

<u>July 10, 2009 and Later</u>.

The plaintiff alleges that by July 10, 2009, his pain became unbearable and he lost all feeling in his penis, testicles, perineum, anus, most of his buttocks, and the back inside of his upper thighs.  He also lost the ability to have a bowel movement and to use the muscles involved with urination. He alleges that even though he had repeatedly and over a long period of time complained about sciatica, had informed the defendants that he was in severe pain and that he was experiencing loss of feeling in significant parts of his body, the defendants would only treat him for constipation.  He alleges that only after his mother intervened on his behalf did PHS and its medical personnel take his complaints seriously and have him evaluated by a neurosurgeon.

These allegations of a failure to address the plaintiff's partial paralysis as anything other than constipation may lead to a reasonable inference of deliberate indifference because a reasonable person may determine that partial paralysis should be treated more seriously than

constipation.  Even so these allegations do not raise a

reasonable inference of deliberate indifference on the part of

defendants Weisner, Stanish, Batdorf and Colabine.  The

plaintiff does not allege how each of these defendants was

involved with his medical care on and after July 10, 2009.

Again the plaintiff fails to allege what each of these

defendants knew about his worsening condition.  Thus, the

allegations regarding the plaintiff's medical care on and after

July 10, 2009 do not lead to a reasonable inference that

defendants Weisner, Stanish, Batdorf and Colabine knew that the

plaintiff faced a substantial risk of serious harm and

disregarded that risk by failing to take reasonable measures to

abate it.


        Summary and Leave to Amend.


        The complaint does not allege facts which lead to a

reasonable inference that defendants Weisner, Stanish, Batdorf

and Colabine knew that the plaintiff faced a substantial risk

of serious harm and disregarded that risk by failing to take

reasonable measures to abate it.  So the complaint fails to

state an Eighth Amendment claim against defendants Weisner,
Stanish, Batdorf and Colabine upon which relief may be granted.
Thus, we will recommend that the Eighth Amendment claim against
these defendants be dismissed.[2]

"[I]f a complaint is subject to a Rule 12(b)(6)
dismissal, a district court must permit a curative amendment
unless such an amendment would be inequitable or futile."
*Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.
2008).  The court "must provide the plaintiff with this
opportunity even if the plaintiff does not seek leave to
amend." *Id.*

Amendment would not be inequitable or futile in this
case.  Thus, in addition to recommending that the Eighth
Amendment claim against defendants Weisner, Stanish, Batdorf

---

2.  Defendants Weisner, Stanish, Batdorf and Colabine contend that
the complaint fails to state a viable Eighth Amendment claim
against them because the plaintiff has not pleaded facts which
raise a reasonable inference that their actions or omissions
caused the plaintiff's injuries.  Since we have already determined
that the complaint fails to state an Eighth Amendment claim upon
which relief can be granted against these defendants we need not
address this argument.

28

and Colabine be dismissed, we will recommend that the plaintiff be granted leave to file an amended complaint.

2. Defendants PHS and PHS Correctional.

Defendants PHS and PHS Correctional contend that the complaint fails to state a claim upon which relief can be granted against them because it fails to adequately allege a policy, practice or custom that unconstitutionally deprived the plaintiff of medical care.

Liability under 42 U.S.C. § 1983 cannot be based on a *respondeat superior* theory. *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995).  This principle extends even to a for-profit private corporation. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003)("PHS cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.").  The Third Circuit has applied the standard for municipal liability to claims against a private corporation providing medical care in a prison. *Id.* at 584.  The parties agree that that is the

29

standard that applies in this case with respect to the claims
against PHS and PHS Correctional.  Accordingly, we begin by
setting forth the standards for municipal liability.

Municipal Liability Standards.

A municipality may be liable under 42 U.S.C. § 1983 if
it subjects a person to a deprivation of rights or causes a
person to be subjected to such deprivation. *Connick v.
Thompson,* 131 S.Ct. 1350, 1359 (2011).  To impose liability on
a municipality a plaintiff must prove that an action pursuant
to a municipal policy or custom caused his injury. *Natale,
supra*, 318 F.3d at 584.  There must be a direct causal link
between the municipal policy or custom and the alleged
constitutional violation. *City of Canton v. Harris,* 489 U.S.
378, 385 (1989).

Municipal policies include the decisions of a
government's lawmakers and the acts of its policymaking
officials. *Connick, supra,* 131 S.Ct. at 1359.  A custom is an
act or practice which, even though not formally approved by an

30

appropriate decisionmaker, is so persistent and widespread as
to have the force of law. *Id.*; *Natale, supra*, 318 F.3d at 584

The acts of an employee may be deemed to be the result
of a municipal policy or custom in three situations: (1) where
the appropriate officer or entity makes a generally applicable
statement of policy and the act complained of is simply an
implementation of that policy; (2) where a policy has not been
announced but federal law has been violated by an act of the
policymaker itself; and (3) where the policymaker has not acted
affirmatively but the need to take some action is so obvious
and the existing practice so likely to result in the violation
of constitutional rights that the policymaker can reasonably be
said to have been deliberately indifferent to the need. *Natale,
supra*, 318 F.3d at 584.

To adequately allege municipal liability a plaintiff
"must identify a custom or policy, and specify what exactly
that custom or policy was." *McTernan v. City of York,* 564 F.3d
636, 658 (3d Cir. 2009).

        Differentiation between Policies and Customs.


        Defendants PHS and PHS Correctional contend that the
complaint fails to state a claim upon which relief can be
granted against them because it fails to differentiate between
policies and customs.


        It is true that the complaint does not differentiate
between policy and custom.  For example, it pleads that PHS's
policy or custom is to provide the least amount of medical care
possible and to delay that care as long as possible.


        But alternative statements of a claim are allowed under
Fed.R.Civ.P. 8(d)(2).  And "a complaint need not pin
plaintiff's claim for relief to a precise legal theory."
*Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011).  Rule 8(a)(2)
"requires only a plausible 'short and plain' statement of the
plaintiff's claim, not an exposition of his legal argument."
*Id.*  Thus, we conclude that the complaint does not fail to

state a claim upon which relief can be granted because it fails to differentiate between policies and customs.

Final Policymaker.

Defendants PHS and PHS Correctional also contend that the complaint fails to state a claim upon which relief can be granted against them because it does not allege that a final policy maker issued the policies or that a final policymaker knew of the customs or acquiesced to the customs.

While a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face, detailed factual allegations are not required. *Twombly*, *supra*, 550 U.S. at 555.  Details regarding the promulgation of the policies or the acquiescence to the customs are not required to state a claim that is plausible on its face.  Thus, we conclude that the complaint does not fail to state a claim upon which relief can be granted because it does not allege that a final policy maker issued the policies or that a final policymaker knew of the customs or acquiesced in the customs.

33

Conclusory Allegations.

Defendants PHS and PHS Correctional contend that the complaint fails to state a claim upon which relief can be granted against them because the allegations of policy or custom are conclusory.  We agree that the allegations regarding some of the alleged policies or customs are conclusory.

The complaint alleges that PHS's policy or custom is that saving money is more important that diagnosing and treating inmate patients.  From that allegation we can not determine what the policy or custom actually is.  Saving money may be the reason behind certain policies or customs.  But the allegation that saving money is more important that treating patients is more like an allegation regarding an attitude than an allegation regarding a policy or custom.  The same is true with regard to the allegation that PHS's policy or custom is that management of potential litigation is more important than appropriate diagnosis and treatment of inmate patients.

34

Similarly, the allegation that defendants PHS and PHS Correctional along with defendant McCarty had a policy or custom of inadequate training in dealing with prisoners with severe medical problems is also conclusory.  The complaint does not allege in what regard or how the training was inadequate.

Because the allegations regarding the policies or customs regarding saving money, managing potential litigation and failing to train are conclusory, they fail to state a claim to relief that is plausible on its face.

Yet the allegations regarding the other alleged policies or customs are not conclusory.

The complaint alleges that it is a policy or custom of PHS to provide the least amount of medical care possible and to delay that care as long as possible, that it is a policy or custom of PHS not to diagnose persons with sciatica as having a chronic problem requiring significant diagnostic testing and procedures, that it is a policy or custom of PHS to have limited doctors available to examine, evaluate and treat inmate

35

patients, that it is a policy or custom of PHS not to order MRIs even in situations in which there are clinical symptoms which are not explained by other tests such as x-rays, and that it is a policy or custom of PHS to treat symptoms rather than to determine the root cause of problems.

These allegations are not detailed.  But they indicate what the policy or custom was and are not merely conclusory. In addition, the factual allegations regarding the plaintiff's condition and care provide context to the allegations.  Thus, the complaint does not fail to state a claim upon which relief can be granted on the basis that the allegations regarding these policies or customs are conclusory.

Causation.

Defendants PHS and PHS Correctional contend that the complaint fails to state a claim upon which relief can be granted because it does not allege facts that show that the policies or customs caused the harm for which the plaintiff seeks damages.  We disagree with respect to those policies or

customs that we concluded were not pleaded in a conclusory
manner.

The complaint alleges that PHS's policy or custom is
not to order MRIs even in situations in which there are
clinical symptoms that are not explained by other tests such as
x-rays.  It alleges that the plaintiff was not given an MRI
even after x-rays did not reveal the cause of his symptoms.
The complaint further alleges that the defendants' actions were
a cause of the plaintiff's permanent partial paralysis and
other injuries and damages.  From these allegations it can
reasonably be inferred that the policy or custom regarding not
ordering MRIs caused the plaintiff harm.

The complaint alleges that as a result of the policy or
custom of providing the least amount of medical care possible
and delaying that care as long as possible it took the
plaintiff years to actually see a doctor and the defendants did
not order necessary diagnostic testing including an MRI.  The
complaint also alleges that as a result of the policies or
customs of not diagnosing persons with sciatica as having a

chronic problem and of treating symptoms rather than

determining the root cause of problems there was a significant

delay in diagnosing and treating the plaintiff until it was too

late to prevent permanent partial paralysis.  The complaint

further alleges that, as a result of the policy or custom of

having limited doctors available, medical care for inmates is

severely rationed.  From these allegations along with the

factual allegations regarding the plaintiff's condition and

medical care it can reasonably be inferred that these policies

or customs caused the plaintiff harm.


     Defendants PHS and PHS Correctional also contend that

if all of the policies or customs alleged by the plaintiff

existed and contributed to his harm, then none of them can be

considered the cause of the plaintiff's harm.  The defendants'

theory is that an actionable harm must be identified with one

particular policy or custom.  There is not law that supports

this theory.  Even assuming that the defendants are correct,

the plaintiff is permitted to plead inconsistent claims under

Fed.R.Civ.P. 8(d)(3).

Thus, the complaint does not fail to state a claim upon which relief can be granted against defendant PHS and PHS Correctional on the basis that it does not adequately allege causation.

Deliberate Indifference.

Defendants PHS and PHS Correctional contend that the complaint fails to state a claim upon which relief can be granted against them because it does not allege that they knew that their policies or customs presented a substantial risk to the plaintiff.

In *City of Canton v. Harris*, 489 U.S. 378, 380 (1989), the Supreme Court held that under certain circumstances a municipality is liable for constitutional violations resulting from its failure to train municipal employees. But it held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom'

39

that is actionable under § 1983." *Id.* at 388.  It stated that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

The Court in *City of Canton* noted that the deliberate indifference standard in the municipal liability context "does not turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation." *Id.* at 389 n. 8.  In other words "the proper standard for determining when a municipality will be liable under § 1983 for constitutional wrongs does not turn on any underlying culpability test that determines when such wrongs have occurred." *Id.*

Defendants PHS and PHS Correctional contend that the subjective recklessness standard of deliberate indifference adopted in *Farmer, supra,* is applicable to the plaintiff's

40

claims against them.  But the Court in *Farmer* indicated that it was not adopting the same deliberate indifference standard as the deliberate indifference standard set forth in *City of Canton* for municipal liability. 511 U.S. at 840.  Because it would permit liability when a municipality disregards obvious needs, the Court in *Farmer* described the deliberate indifference standard set forth in *City of Canton* as an objective standard. *Id.* at 841.  The Court in *Farmer* contrasted it with the subjective recklessness standard of deliberate indifference that it was adopting for an Eighth Amendment violation.

Thus, contrary to the defendants' argument, the complaint does not fail to state a claim upon which relief can be granted because it does not allege that they knew that their policies or customs presented a substantial risk to the plaintiff.  "Needless to say, moreover, considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official." *Farmer, supra,* 511 U.S. at 841.

Summary and Leave to Amend.

Because the allegations regarding the policies or customs regarding saving money, managing potential litigation and failing to train are conclusory, they fail to state a claim to relief that is plausible on its face.  Therefore, the complaint fails to state a claim against defendants PHS and PHS Correctional upon which relief may be granted as to those policies.  Thus, we will recommend that the claims based on those policies or customs be dismissed.  Yet, because we can not say that amendment would be futile, we will also recommend that the plaintiff be granted leave to file an amended complaint.

3.   Defendant McCarty.

Defendant McCarty contends that the complaint fails to state an Eighth Amendment claim against her upon which relief may be granted because it fails to sufficiently allege deliberate indifference on her part.

42

The complaint alleges that defendant McCarty helped to create, to implement and/or to retain the policies and customs of PHS.  It also alleges that McCarty, along with PHS, had a policy or custom of inadequate training in dealing with prisoners with severe medical problems.  These allegations are conclusory.  They do not allege facts from which it can reasonably be inferred that defendant McCarty knew of a substantial risk to the plaintiff.  They do not allege facts that state an actionable claim of deliberate indifference under the *Farmer* standard.

The plaintiff also alleges that when PHS would not let him see a doctor he sought defendant McCarty's help.  He alleges that he complained that he had repeatedly gone through sick call and had not received adequate care.  He alleges that in response to his plea for help, defendant McCarty told him that he needs to go through sick call.

Defendant McCarty asserts that the plaintiff has alleged facts which indicate that he received medical treatment, in that he alleges that he was seen by two doctors

43

and other medical professionals and that he received x-rays and
Motrin.  She contends that as the Corrections Health Care
Administrator her role is administrative and that she does not
prescribe medication or decide what course of treatment an
inmate should receive.  She asserts that she reasonably relies
upon the professional expertise of the medical staff.

A prison official is not deliberately indifferent
simply because she failed to respond to a prisoner's medical
complaints when the prisoner was already being treated by a
prison doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.
1993).  "Absent a reason to believe (or actual knowledge) that
prison doctors or their assistants are mistreating (or not
treating) a prisoner, a non-medical prison official . . . will
not be chargeable with the Eighth Amendment scienter
requirement of deliberate indifference." *Spruill v. Gillis*, 372
F.3d 218, 236 (3d Cir. 2004).

The complaint does not plead facts from which it can
reasonably be inferred that, during the time that the plaintiff
was being treated by the medical staff for his sciatica,

44

defendant McCarty was deliberately indifferent to the plaintiff's needs.  On the other hand, the complaint does allege facts from which it can reasonably be inferred that defendant McCarty had a reason to believe that the plaintiff's medical condition was not being treated after he was partially paralyzed.  So the complaint alleges facts from which it reasonably can be inferred that defendant McCarty was deliberately indifferent to the plaintiff's serious medical need.

Because the complaint states an Eighth Amendment claim against defendant McCarty upon which relief can be granted, we will recommend that defendant McCarty's motion to dismiss the complaint be denied.

B. Negligence Claims.

1. Certificate of Merit.

Defendants PHS, PHS Correctional, Weisner, Stanish, Batdorf and Colabine contend that the plaintiff did not file a

45

certificate of merit as required by Pa.R.Civ.P. 1042.3.  Thus, they contend, the plaintiff's negligence claims should be dismissed.

But the plaintiff has in fact filed a certificate of merit. *See Doc. 5.*  In their reply brief, the defendants concede that the plaintiff filed a certificate of merit.  Still they contend that the plaintiff's negligence claims should be dismissed because they were not served with a copy of the certificate of merit.  Defendant PHS also contends that the certificate of merit is deficient.  We will not address those arguments since they were raised for the first time in the defendants' reply brief.  Moreover, apparently in response to the defendants' contentions the plaintiff recently filed amended certificates of merit. *See Docs. 38-42.*

2.  Corporate Negligence.

Defendants PHS and PHS Correctional contend that the doctrine of corporate negligence does not apply to them.

46

In *Thompson v. Nason Hospital,* 591 A.2d 703 (Pa. 1991), in recognition of the corporate hospital's role in the total health care of its patients, the Supreme Court of Pennsylvania adopted the theory of corporate negligence as applied to hospitals.  Under the theory of corporate negligence, a hospital has a nondelegable duty to the patient and "is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital."  *Id.* at 707.  Under a corporate negligence theory, a hospital has a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment, a duty to select and retain only competent physicians, a duty to oversee all persons who practice medicine within its walls as to patient care, and a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients. *Id.* at 707-708.

Defendants PHS and PHS Correctional contend that the theory of corporate negligence applies only to hospitals and other entities that provide comprehensive health care.  They assert that while they provide medical care services to inmates

47

they are not equivalent to a comprehensive health care center.

Thus, they contend, the theory of corporate negligence does not

apply to them.

The plaintiff agrees that corporate negligence applies

only to entities that provide comprehensive health care.  But,

he asserts, PHS controls the healthcare of prisoners in SCI-

Coal Township, where the plaintiff was housed.  Thus, he

argues, the theory of corporate negligence applies to PHS.

The Pennsylvania Supreme Court has not ruled on the

issue of whether a private corporation providing health care to

inmates is liable for its negligence under a corporate

negligence theory.  Thus, we must attempt to predict how the

Pennsylvania Supreme Court would rule on the issue. *See Spence

v. ESAB Group, Inc.,* 623 F.3d 212, 216 (3d Cir. 2010)("In the

absence of a controlling decision by the Pennsylvania Supreme

Court, we must predict how it would rule if faced with the

issue.").

Defendants PHS and PHS Correctional cite *Battle v.
Prison Health Services, Inc.,* A.D. No. 552, 2009, slip op. at 2
(C.C.P. Greene Cty. Jan. 31, 2011), a case from the Court of
Common Pleas of Greene County which held that corporate
negligence does not apply to PHS.  But there are cases to the
contrary. *See Wheeler v. Prison Health Services, Inc.,* Civil
Action No. 09-410, 2010 WL 3489405 at *7 (E.D. Pa.
2010)(predicting that if the Pennsylvania Supreme Court were to
address the issue it would extend corporate negligence to a
company such as PHS that is responsible for an inmate's
healthcare)[3]; See also *Zheng v. Palakovich,* 4:09-CV-1028, 2010
WL 1508521 at *7 (M.D.Pa. Apr. 13, 2010)(Rambo, J.)(predicting
that if the Pennsylvania Supreme Court were to address the
issue it would hold that companies such as MHM Correctional
Services, Inc., a private company providing mental health

---

3.  In a footnote, the plaintiff asserts that PHS and PHS
Correctional are collaterally estopped from asserting that the
doctrine of corporate liability does not apply to them because the
court in *Wheeler* already decided the issue.  We will not address
an argument raised only in a footnote.  Moreover, defendants PHS
and PHS Correctional contend that the *Wheeler* decision is not
final and that PHS has not yet had a full and fair opportunity to
litigate corporate negligence in that case.  Collateral estoppel
is an issue which can be raised, if appropriate, at the summary
judgment stage where a factual record can be made.

services to inmates at SCI-Smithfield, can be held liable for corporate negligence); *Fox v. Horn,* NO. 98-5279, 2000 WL 49374 at *8 (E.D.Pa. Jan. 21, 2000)(predicting that if the Pennsylvania Supreme Court were to address the issue it would hold that Correction Physician Services, Inc., a company that contracts to provide medical services to inmates, is liable for corporate negligence).

Since they are incarcerated, inmates can not provide for their own medical care.  Rather, they must accept the care provided to them.  The complaint alleges that PHS had a contract with the Commonwealth of Pennsylvania or the Pennsylvania Department of Corrections to provide health care to inmates.  It is a reasonable inference that PHS and PHS Correctional provide comprehensive health care to inmates. Thus, PHS and PHS Correctional may be liable under a theory of corporate negligence.

Defendants PHS and PHS Correctional also contend that the complaint fails to state a claim of corporate negligence upon which relief can be granted because it does not allege

that they breached one of the duties recognized by the *Thompson*
court.  The complaint alleges a number of polices or customs of
PHS which he contends caused him injury.  The complaint states
a corporate negligence claim upon which relief may be granted
against defendants PHS and PHS Correctional.

       3. Supplemental Jurisdiction.

      Defendant McCarty does not address the merits of the
plaintiff's negligence claim.  Rather, she asserts that if the
court dismisses the federal claim against her it should decline
to exercise supplemental jurisdiction over the state law
negligence claim.  Similarly, defendants PHS, PHS Correctional,
Weisner, Stanish, Batdorf and Colabine contend that if the
court dismisses the federal claims it should decline to
exercise supplemental jurisdiction over the state law
negligence claims.

      We do not recommend that all of the Eighth Amendment
claims be dismissed.  Thus, we will not recommend that the

court decline to exercise supplemental jurisdiction over the
negligence claims.

IV. Recommendations.

It is recommended that the motion (doc. 18) to dismiss
filed by defendants PHS, PHS Correctional, Weisner, Stanish,
Batdorf and Colabine be granted in part and denied in part.  It
is recommended that the Eighth Amendment claims against
defendants Weisner, Stanish, Batdorf and Colabine be dismissed.
It is recommended that the Eighth Amendment claims against
defendants PHS and PHS Correctional based on their policies or
customs regarding saving money, managing potential litigation
and failing to train be dismissed.  It is recommended that
motion to dismiss otherwise be denied.

It is also recommended that the motion (doc. 21) to
dismiss filed by defendant McCarty be denied.

Finally, it is recommended that the plaintiff be granted leave to file an amended complaint.


                                        ***/s/ J. Andrew Smyser***
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  June 2, 2011.